UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EXERGEN CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KAZ USA, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 1:13-cv-10628-RGS<br><br>JURY TRIAL DEMANDED<br><br>*Leave to file Third Amended Complaint granted on May 27, 2014 (D.I. 64)* |

**EXERGEN CORPORATION'S THIRD AMENDED COMPLAINT**

Exergen Corporation, for its complaint against defendant, Kaz USA, Inc., alleges as follows.

**PARTIES**

1. Plaintiff, Exergen Corporation ("Exergen"), is a corporation organized and existing under the laws of the Commonwealth of Massachusetts and having its principal place of business at 400 Pleasant Street, Watertown, Massachusetts, within this judicial district.

2. Defendant, Kaz USA, Inc. ("Kaz"), is, upon information and belief, a corporation organized under the laws of Massachusetts having its principal executive offices at 250 Turnpike Road, Southborough Massachusetts, and doing business in this judicial district, including business related to the claims asserted in this Complaint.

## JURISDICTION AND VENUE

3. This action is for patent infringement. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant. Defendant is a Massachusetts corporation. Defendant has conducted and solicited and continues to conduct and solicit business in the Commonwealth of Massachusetts. Defendant has caused and is continuing to cause tortious injury in the Commonwealth of Massachusetts. Upon information and belief, Defendant, directly or through intermediaries, uses, offers for sale, imports, or distributes to others for such purposes, infrared thermometers, in the United States and the Commonwealth of Massachusetts.

5. Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as, *inter alia*, Defendant is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

6. On August 31, 2010, United States Patent No. 7,787,938 ("the '938 Patent"), entitled "Temporal Artery Temperature Detector," was lawfully issued.

7. A copy of the '938 Patent is attached as Exhibit A and incorporated herein.

8. Exergen is the sole owner of the '938 Patent and all rights of recovery thereunder.

9. The '938 Patent has not expired and is in full force and effect.

10. Exergen has marked its products in connection with the '938 patent in compliance with 35 U.S.C. § 287(a).

11. On September 18, 2001, United States Patent No. 6,292,685 ("the '685 Patent"), entitled "Temporal Artery Temperature Detector," was lawfully issued.

12. A copy of the '685 Patent is attached as Exhibit B and incorporated herein.

13. Exergen is the sole owner of the '685 Patent and all rights of recovery thereunder.

14. The '685 Patent has not expired and is in full force and effect.

15. Exergen has marked its products in connection with the '685 Patent in compliance with 35 U.S.C. § 287(a).

16. Kaz has directly infringed the '938 Patent by using, selling, offering to sell, and/or importing infringing products into the United States, including infrared thermometers sold under the name Vicks Forehead Thermometer. For example, Kaz directly infringes claims 39-50 of the '938 Patent by such actions.

17. Kaz has also directly and indirectly infringed the '938 Patent and indirectly infringed the '685 Patent because it has used and is using, has offered and is offering to sell, and/or has sold and is selling infrared thermometers the use of which infringes both the '938 Patent and the '685 Patent, including but not limited to by selling thermometers sold under the name Vicks Forehead Thermometer.

18. The instructions provided to consumers with the Vicks Forehead Thermometer explicitly instruct users to use the product in an infringing manner. A copy of the instruction manual ("Vicks Manual") has been attached as Exhibit C and is incorporated herein. Upon information and belief, defendant specifically intends for its consumers to follow these instructions and to use the thermometer to infringe the '938 and '685 Patents. At least some consumers do follow these instructions and use the thermometer in an infringing manner.

19. The Vicks Manual is very clear and specific about how the Vicks Forehead Thermometer should be used.

20. The Vicks Manual only instructs use of the product in a manner that would infringe the '938 Patent and the '685 Patent.

3

21.     The "Quick Start Guide" section of the Vicks Manual on page 2 instructs users in part, as follows, "Move hair away from forehead and place scanner in the center of the forehead. Press and release power button and scan forehead slowly from the center of the forehead to the temple – wait for confirmation beep."

22.     The "Directions for Use" section on page 8 of the Vicks Manual instructs users in part, as follows, "Place the probe gently and flush onto the area approximately ½ inch above the center of the eyebrow.  If the eyebrow area is covered with hair, sweat or dirt, please clean the area beforehand to improve the reading accuracy.  Press the Power button and release it.  Start to move the instrument steadily from ½ inch above the center of the eyebrow to ½ inch above the tail of the eyebrow area and back up again.  A long beep will sound after 3 seconds to signal measurement complete."

23.     On page 4 of the Vicks Manual, there is a heading, "How the Forehead Thermometer Measures Body Temperature" which explains, "The Forehead Thermometer measures infrared energy radiated from the skin above of the eyebrow area and the surrounding tissue.  This energy is collected through the lens and converted to a temperature value. Temperature readings obtained by scanning above the eyebrow area will provide the greatest accuracy."

24.     The Vicks Forehead Thermometer includes a radiation sensor.

25.     The Vicks Manual instructs users to use the device over an artery.

26.     The temporal artery, for example, is located at the side of the face just in front of the ear.  The temporal artery normally branches into a parietal branch and a frontal branch. The frontal branch extends along the side of the forehead.  The temporal artery has relatively constant blood flow.

27. The temporal artery is reliable for temperature measurement in part because the temporal artery has no or few known arteriovenous anastomoses (AVAs), which function as connections between arteries and veins and regulate skin blood flow.

28. The directions quoted herein and the description on page 4, among other evidence in the Vicks Manual, evident from product use and from scientific principles, demonstrate that use of the Vicks Forehead Thermometer constitutes an act of direct infringement of the '938 Patent.

29. The directions quoted herein, among other evidence in the Vicks Manual and evident from product use and from scientific principles, demonstrate that use of the Vicks Forehead Thermometer constitutes an act of direct infringement of the '685 Patent.

30. The Vicks Manual provides only instructions for a user to infringe and no inconsistent direction or inconsistent indication of how an end user would use the product.

31. The Vicks Forehead Thermometer was made to be used in the manner directed in the Vicks Manual.

32. In fact, the Vicks Manual implies that other methods of use would be undesirable, stating, "The Forehead Thermometer has been clinically tested and proven to be safe and accurate when used in accordance with its operating instruction manual."

33. The Vicks Forehead Thermometer was made to be used in a manner that infringes the '938 Patent.

34. The use of the Vicks Forehead Thermometer as directed by the Vicks Manual infringes a number of claims of the '938 Patent. For example, using the Vicks Forehead Thermometer as directed by the Vicks Manual infringes claims including, but not limited to, 1, 4-6, 10-13, 26, 29-33, 36-38 and 51-57 of the '938 Patent.

35. By way of example, Claim 26 of the '938 Patent reads, "A method of detecting human body temperature comprising, with a radiation detector, measuring radiation as target skin surface over an artery is viewed, the artery having a relatively constant blood flow, and electronically determining a body temperature approximation, distinct from skin surface temperature, from the radiation detector as the target skin surface over the artery is viewed." Use of the Vicks Forehead Thermometer as directed by the Vicks Manual constitutes infringement of this claim of the '938 Patent.

36. By way of example, Claim 51 of the '938 Patent reads, "A method of detecting human body temperature comprising: measuring temperature of a region of skin of the forehead; and processing the measured temperature to provide a body temperature approximation based on heat flow from an internal body temperature to ambient temperature." Use of the Vicks Forehead Thermometer as directed by the Vicks Manual constitutes infringement of this claim of the '938 Patent.

37. The Vicks Forehead Thermometer was made to be used in a manner that infringes the '685 Patent.

38. The use of the Vicks Forehead Thermometer as directed by the Vicks Manual infringes a number of claims of the '685 Patent. For example, using the Vicks Forehead Thermometer as directed by the Vicks Manual infringes claims of the '685 Patent including, but not limited to 1, 2, 12-14 and 17, 20-23, 26.

39. For example, Claim 14 of the '685 Patent reads: A method of detecting human body temperature comprising: detecting the temperature at a forehead through a lateral scan across the temporal artery; and computing and internal body temperature of the body as a function of ambient temperature and sensed surface temperature." Use of the Vicks Forehead

6

Thermometer as directed by the Vicks Manual constitutes infringement of this claim of the '685 Patent.

40. For example, Claim 17 of the '685 Patent reads: A method as claimed in claim 14 wherein the temperature detector comprises a radiation sensor which views a target surface area of the forehead. Use of the Vicks Forehead Thermometer as directed by the Vicks Manual constitutes infringement of this claim of the '685 Patent.

41. The Vicks Forehead Thermometer remained on sale and the Vicks Manual remained unchanged subsequent to Defendant's actual knowledge of the '938 Patent.

42. The Vicks Forehead Thermometer remained on sale and the Vicks Manual remained unchanged subsequent to Defendant's actual knowledge of the '685 Patent.

43. While Exergen believes that Defendant's knowledge of the patents-in-suit predated any formal notification by Exergen, Exergen states that through counsel, it informed Kaz as to the existence of the '938 Patent and '685 Patent in a letter dated March 11, 2013.

44. Defendant has been aware of the existence of the '938 Patent since at least as early as about March 13, 2013.

45. Defendant has been aware of the existence of the '685 Patent since at least as early as about April 2007.

46. Exergen specifically notified Kaz about the '685 Patent in connection with forehead thermometers and thermometers employing the temporal artery in correspondence from Exergen's President and CEO, Francesco Pompei, Ph.D. dated April 18, 2007. This letter is attached as Exhibit D.

## COUNT I
## INFRINGEMENT OF THE '938 PATENT

47. Exergen incorporates by reference paragraphs 1-45 above as though fully set out herein.

48. On information and belief, Defendant has infringed and continues to infringe, directly and indirectly through contributory and/or induced infringement, one or more claims of the '938 Patent, and sells the infringing thermometers with the knowledge and intent that they will be used by end users and that such use infringes the '938 Patent, and the intent that such thermometers are especially designed to be and are used in a manner which infringes the '938 Patent. As evidenced by, *inter alia,* the instructions for use, such thermometers are, and are known and intended by Defendant to be, especially made and adapted for use in practicing a method of use that infringes the '938 Patent, constituting a material part of the invention of the patent, and not being staple items or commodities of commerce suitable for substantial non-infringing use.

49. Kaz is a direct competitor of Exergen with respect to the subject matter of the '938 patent.

50. On information and belief, Defendant was aware of the existence of the '938 Patent and its infringement of the '938 Patent has been intentional, deliberate, and willful.

51. By reason of the aforesaid infringement, Exergen is damaged and is entitled to damages adequate to compensate for Defendant's infringement.

52. Defendant's infringement of the '938 Patent has caused and is causing irreparable injury to Exergen, for which Exergen has no adequate remedy at law. Defendant will continue its unauthorized conduct unless enjoined by this Court.

## COUNT II
## INFRINGEMENT OF THE '685 PATENT

53. Exergen incorporates by reference paragraphs 1-51 above as though fully set out herein.

54. On information and belief, Defendant has been using and is contributorily infringing and/or actively inducing others, including end users, to infringe the '685 Patent, and sells the infringing thermometers with the knowledge and intent that they will be used by end users and that such use infringes the '685 Patent, and the intent that such thermometers are especially designed to be and are used in a manner which infringes the '685 Patent. As evidenced by, *inter alia,* the instructions for use, such thermometers are, and are known and intended by Defendant to be, especially made and adapted for use in practicing a method of use that infringes the '685 Patent, constituting a material part of the invention of the patent, and not being staple items or commodities of commerce suitable for substantial non-infringing use.

55. Kaz is a direct competitor of Exergen with respect to the subject matter of the '685 Patent.

56. On information and belief, Defendant was aware of the existence of the '685 Patent and its infringement of the '685 Patent has been intentional, deliberate, and willful.

57. By reason of the aforesaid infringement, Exergen is damaged and is entitled to damages adequate to compensate for Defendant's infringement.

58. Defendant's infringement of the '685 Patent has caused and is causing irreparable injury to Exergen, for which Exergen has no adequate remedy at law. Defendant will continue its unauthorized conduct unless enjoined by this Court.

# PRAYER FOR RELIEF

WHEREFORE, Exergen respectfully requests this Court to grant the following relief, and any other relief the Court may deem proper:

1. Enter judgment in favor of Exergen determining that Kaz directly infringes the '938 Patent in violation of 35 U.S.C. § 271(b);

2. Enter judgment in favor of Exergen determining that Kaz induces infringement of, and has induced infringement of, the '938 Patent in violation of 35 U.S.C. § 271(b);

3. Enter judgment in favor of Exergen determining that Kaz induces infringement of, and has induced infringement of, the '685 Patent in violation of 35 U.S.C. § 271(b);

4. Enter judgment in favor of Exergen determining that Kaz contributorily infringes, and has contributorily infringed, the '938 Patent in violation of 35 U.S.C. § 271(c);

5. Enter judgment in favor of Exergen determining that Kaz contributorily infringes, and has contributorily infringed, the '685 Patent in violation of 35 U.S.C. § 271(c);

6. Permanently enjoin Kaz and its officers, agents, divisions, affiliate, subsidiaries, successors, employees, and representatives, and all those controlled by or acting in concert or privity with them from infringing, inducing the infringement, and/or contributing to the infringement of the '938 Patent;

7. Permanently enjoin Kaz and its officers, agents, divisions, affiliate, subsidiaries, successors, employees, and representatives, and all those controlled by or acting in concert or privity with them from infringing, inducing the infringement, and/or contributing to the infringement of the '685 Patent;

8. Award Exergen damages in an amount to be determined at trial;

9. Award Exergen treble damages for willful infringement pursuant to 35 U.S.C. § 284; and

10. Award such other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Exergen hereby demands a trial by jury.

Date: May 27, 2014

Respectfully submitted,

EXERGEN CORPORATION

By its attorneys,

/s/ Brandon T. Scruggs
Kerry L. Timbers (BBO # 552293)
Robert M. Asher (BBO # 22865)
Joel R. Leeman (BBO # 292070)
Brandon T. Scruggs (BBO # 672541)
Sharona H. Sternberg (BBO # 682384)
SUNSTEIN KANN MURPHY & TIMBERS LLP
125 Summer Street
Boston, MA 02110-1618
Tel: (617) 443-9292
Fax: (617) 443-0004
Email: bscruggs@sunsteinlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on the above date.

/s/ Brandon T. Scruggs
Brandon T. Scruggs

03577/00508 2108792.1